**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

KELLY A. McPHEE,

          CASE NO. 1:16-cv-13969
*Plaintiff*,        MAGISTRATE JUDGE PATRICIA T. MORRIS

*v.*

SOCIAL SECURITY COMMISSIONER,

        *Defendant*.
_____/

**MAGISTRATE JUDGE'S OPINION AND ORDER ON
MOTION FOR ATTORNEY'S FEES UNDER THE EAJA**
**(Doc. 19)**

**I.    OPINION**

    **A.    Introduction and Background**

Pursuant to the parties' consent under 28 U.S.C. § 636(c), E.D. Mich. LR 72.1(b)(3), before the Court lies Plaintiff Kelly A. McPhee's Motion for Fee under 28 U.S.C. § 2412, also known as the Equal Access to Justice Act ("EAJA"). (Docs. 13, 19).

Joshua T. McFarland represents McPhee in the instant action. McPhee applied for benefits under the Disability Insurance Benefits program of Title II, 42 U.S.C. § 401 *et seq.*, on April 18, 2011, alleging an onset date of December 17, 2010. (Tr. Tr. 115-16). She amended this date to September 15, 2008 at her hearing before Administrative Law Judge Ethel Revels. (Tr. 37-71). McPhee's application was denied at the initial level, then by the ALJ, and finally by the Appeals Council. (Tr. 1-6, 17-23, 115-23). McPhee then filed for judicial review of her claims on November 9, 2016. (Doc. 1).

The parties filed cross motions for summary judgment. (Docs. 12, 15). On November 26, 2017, the undersigned issued an opinion and order remanding the instant matter to the

Commissioner for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). (Doc. 17-18). Thereafter, on December 12, 2017, McPhee filed the instant Motion for EAJA Fee. (Doc. 19). The Commissioner filed a response on December 18, 2017, (Doc. 23). McPhee's Motion is therefore ready for determination.

## B. Analysis

Attorneys in Social Security benefits cases may collect fees through two statutes: the EAJA, and 42 U.S.C. § 406. Fees collected under the EAJA are paid by the Commissioner out of its own coffers, whereas fees collected under § 406 are paid out of the claimant's past due benefits. *See Scappino v. Comm'r of Soc. Sec. Admin.*, No. 1:12-CV-02694, 2015 WL 7756155, at *3 (N.D. Ohio Dec. 1, 2015). Fees may be collected under the EAJA only where the Commissioner's position was not "substantially justified," and thus operates to "discourage the government from taking unjustified positions." *Jones v. Schweiker*, 565 F. Supp. 52, 55 (W.D. Mich. 1983).

### 1. Standard for Obtaining EAJA Fees

Where a court renders a judgment favorable to a Social Security claimant who was represented by counsel, the court may allocate to that counsel a "reasonable" fee for such representation. 28 U.S.C. § 2412(b). An application for attorney's fees under the EAJA, including an itemized justification for the amount requested, must be filed within thirty days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). In addition, the claimant must be an eligible party, *i.e.* one "whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

Three additional conditions must be met in order to recover attorney's fees under the EAJA: (1) the claimant must be a prevailing party; (2) the government's position must be

without substantial justification; and (3) there must be no special circumstances which would warrant a denial of fees. *See Ratliff v. Commissioner of Soc. Sec.*, 465 F. App'x 459, 460 (6th Cir. 2012); *Marshall v. Commissioner*, 444 F.3d 837, 840 (6th Cir. 2006).

### 2. EAJA Fees Are Justified

At the outset, I note that McPhee obtained a Sentence Four remand, making her a prevailing party in this matter, *see Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012); (Docs. 17-18), and her Motion properly contains an itemized list of the amount expended, (Doc. 19, Exs. 1-2). The Commissioner does not dispute (thereby conceding) that McPhee's net worth does not exceed two-million dollars, and does not contend that any "special circumstances" warrant denying fees in this case. (Doc. 23). McPhee thus satisfies all of the prerequisite criteria for obtaining EAJA fees. Commissioner limits its challenge to arguing its position in this matter—*i.e.*, that remand was not required—was substantially justified. The allegation that the Commissioner's position was substantially justified "imposes no proof burden on the fee applicant, but is simply an allegation or pleading requirement." *Scarborough v. Principi*, 541 U.S. 401, 414–15 (2004). That allegation "functions to shift the burden to the Government to prove that its position in the underlying litigation 'was substantially justified.'" *Id*.

The Commissioner's "position" includes both its underlying action and its litigation position. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(D); *see also Noble v. Barnhart*, 230 F. App'x 517, 519 (6th Cir. 2007); *Delta Eng'g v. United States*, 41 F.3d 259, 261 (6th Cir. 1994). In *Pierce v. Underwood*, the Supreme Court characterized the descriptor "substantially justified" as fitting for a government "position" if "there is a 'genuine dispute[]' . . . or 'if reasonable people could differ as to [the appropriateness of the contested action[.]'" 487 U.S. 552, 565 (1988)

(internal citations omitted). "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id.* Such language implies the inverse as well—a position need not sink to the depths of the nearly-sanctionable in order to lack substantial justification. Under these standards, the failure of the Commissioner to prevail in warding off remand does not in and of itself constitute a lack of substantial justification for its position. *Accord, e.g.*, *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 498 (6th Cir. 2014) ("[T]he remand standard is not the equivalent of a finding that the government's position was not substantially justified." (citing *Couch v. Sec'y of Health & Human Servs.*, 749 F.2d 359, 360 (6th Cir. 1984))). Nor does McPhee's victory in attaining a remand raise any presumption that the Commissioner's position was not substantially justified, though "objective indicia such as a string of [government] losses can be indicative." *Glenn*, 763 F.3d at 498 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see United States v. Real Property Located at 2323 Charms Road*, 946 F.2d 437, 440 (6th Cir. 1991).

In practice, the question whether a governmental position is substantially justified proves sensitive and subject to various considerations. The presence of spurious or superfluous arguments in a claimant's brief does not, in and of itself, justify opposition to her valid arguments. *E.g., Glenn*, 763 F.3d at 499; *cf. Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990) ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."). Likewise, where an ALJ's opinion compounds egregious errors, the government is typically less justified in defending it. *See Keigley v. Comm'r of Soc. Sec.*, No. 1:14-CV-249, 2015 WL 9286636, at *1 (W.D. Mich. Dec. 1, 2015), *report and*

4

*recommendation adopted,* No. 1:14-CV-249, 2015 WL 9307338 (W.D. Mich. Dec. 21, 2015) (awarding fees because "the ALJ's decision was based upon both mischaracterizations of the record and conclusions which are contrary to controlling legal authority"); *Cowart v. Comm'r of Soc. Sec.*, 795 F. Supp. 2d 667, 669 (E.D. Mich. 2011) (awarding fees in light of "three critical" errors in the ALJ's analysis). By contrast, "courts in this Circuit have repeatedly found the Government substantially justified in defending an ALJ's denial of benefits where there was no overwhelming evidence of a disability and the case was remanded to the ALJ to cure deficiencies in his or her decision." *Ratliff v. Astrue*, No. 1:108CV2388, 2010 WL 11519468, at *2 (N.D. Ohio Oct. 7, 2010), *aff'd sub nom. Ratliff v. Comm'r of Soc. Sec.*, 465 F. App'x 459 (6th Cir. 2012) (discussing *Anderson v. Comm'r of Soc. Sec.*, 198 F.3d 244 (6th Cir. Nov. 12, 1999) (unpublished table decision)); *see also Anderson*, 198 F.3d at *6 ("[T]he ALJ's lack of explicit articulation did not establish that there was no reasonable basis for the ALJ's decision to deny benefits."). *But see Cody v. Comm'r of Soc. Sec.*, No. 1:13CV—344, 2015 WL 2089713, at *6 (N.D. Ohio May 4, 2015) ("[N]either *Anderson* nor *Ratliff* stands for the proposition that the Commissioner's litigation position is *per se* substantially justified whenever a court remands a case to simply correct an articulation error.").

The Commissioner argues its position was substantially justified for two reasons: (1) as I acknowledged in my opinion, the record presented an "evidentiary close call," (Doc. 17 at 22); and (2) "irrespective of the sufficiency of [the] ALJ's step-three analysis, this case turned on whether plaintiff put forth enough evidence to prove a finding of disability under listing 1.04A was plausible," and McPhee failed to present any citations in arguing McPhee met such listing, (Doc. 23 at ID 1167). Neither argument has merit.

At the outset, I address a footnote in the Commissioner's brief in which it avers its opposition to McPhee's "remaining argument that the ALJ improperly evaluated the medical opinion evidence" was "at the very least, legally and factually reasonable." (Doc. 23 at ID 1168 n.2). Even assuming this is true, however, has no bearing on whether the Commissioner's position *as to McPhee's prevailing argument* was substantially justified. *See Glenn*, 763 F.3d at 499. The only pertinent subjects at issue, therefore, are the Commissioner's two arguments addressing its position as to McPhee's Step-Three argument.

As to the first of these arguments, I simply reiterate what I wrote in my original opinion: "Although the Commissioner put[] forth a good argument, that argument [was] no substitute for the proper standard and analysis that were the ALJ's responsibility." (Doc. 17 at 22). Indeed, the fact that an evidentiary close call existed in the record does not ameliorate the ALJ's error, it *exacerbates* the error. *Cf. Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (without proper articulation of the ALJ's listing-related considerations, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence"). This remains particularly true in light of the ALJ's outright failure to consult an expert opinion on equivalency, as required by agency rules. *See, e.g.*, SSR 96-6p, 1996 WL 374180, at *3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the commissioner on the issue of equivalence on the evidence before the [ALJ] . . . *must* be received into the record as expert opinion evidence and given appropriate weight." (emphasis added)); *see also Jenkins v. Colvin*, No. CV 15-12126, 2016 WL 6651853, at *5 (E.D. Mich. July 29, 2016), *report and recommendation adopted sub nom. Jenkins v. Comm'r of Soc. Sec.*, No. 15-CV-12126, 2016 WL 4361479 (E.D. Mich. Aug. 16, 2016) ("[F]ailure to obtain a medical opinion on the question of whether a claimant meets a

listing constitutes harmless error when the evidence *overwhelmingly* demonstrates that the claimant could not meet the elements of a given listing." (emphasis added)); *cf. Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 658 (6th Cir. 2009) ("[I]n some cases it may be difficult, or even impossible, to assess whether an ALJ's failure to rate the B criteria was harmless."). In such instances, the error is clearly not harmless. *Accord, e.g.*, *Crooks v. Comm'r of Soc. Sec.*, No. 12-13365, 2014 WL 3400697, at *4 (E.D. Mich. July 10, 2014) (awarding EAJA fees because "the ALJ's failure to obtain the opinion of a qualified medical advisor on the issue of equivalence violated SSR 96-6p," and thus "ran contrary to established legal precedent"). This should have been evident to the Commissioner in deciding to oppose McPhee's appeal to this Court.

As to the Commissioner's second argument, I note that the failure to furnish citations does not necessarily condemn an argument to failure. Courts have discretion in determining whether to deem such an argument waived. *E.g.*, *Reynolds*, 424 F. App'x at 416 (characterizing the doctrine of waiver as "prudential and not jurisdictional"); *accord Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 549 (6th Cir. 2012) (Moore, J., concurring); *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 124 (6th Cir. 2009); *Gasca-Rodriguez v. Holder*, 322 F. App'x 447, 449 (6th Cir. 2009) (quoting *Youghiogheny and Ohio Coal Co. v. Milliken*, 200 F.3d 942, 955 (6th Cir. 1999)). Moreover, this Court has regularly emphasized that—even absent developed argumentation from a claimant—a clearly defunct analysis at Step Three precludes meaningful judicial review, and therefore requires remand. *Accord, e.g.*, *Snell v. Comm'r of Soc. Sec.*, No. 215CV11063NGEPTM, 2016 WL 1128421, at *4 (E.D. Mich. Feb. 17, 2016, *report and recommendation adopted,* No. 15-11063, 2016 WL 1106986 (E.D. Mich. Mar. 22, 2016) ("[I]t is impossible to determine whether substantial evidence supports an

ALJ's determination without a [sufficient Step Three] analysis"); *Wiley v. Comm'r of Soc. Sec.*, No. 14-12739, 2015 WL 3580734, at *8 (E.D. Mich. June 5, 2015) (same); *Ford v. Comm'r of Soc. Sec.*, No. 13-CV-14478, 2015 WL 1119962, at *16 (E.D. Mich. Mar. 11, 2015) (same); *Denson v. Comm'r of Soc. Sec.*, No. 13-CV-14338-DT, 2014 WL 4840753, at *12 (E.D. Mich. Sept. 28, 2014) (same); *cf. Green v. Comm'r of Soc. Sec.*, No. 16-10093, 2016 WL 7972149, at *12 (E.D. Mich. Dec. 21, 2016), *report and recommendation adopted sub nom. Green v. Colvin*, No. 16-10093, 2017 WL 282175 (E.D. Mich. Jan. 23, 2017) ("While Green's limited argument could reasonably merit a finding of waiver, the Court finds it proper to review Green's medical record to determine whether the ALJ's characterization of her mental health is supported by substantial evidence."). A claimant's lack of citations does not substantially justify her opponent's position.

For these reasons, the Commissioner's position on McPhee's Step-Three argument was not substantially justified.

### 3. The Amount and Rate of EAJA Fees to be Paid

EAJA fees must be "reasonable." 28 U.S.C. § 2412(b). The EAJA provides that "fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

McPhee's attorney alleges that he expended 18.75 hours of attorney time in the preparation and prosecution of the instant case. Given that this case involved substantial questions of law and fact, this amount of hours is reasonable. The Court has also examined

each of the entries in McPhee's itemized list of hours expended, and finds these entries to be reasonable.

The EAJA provides for a $125 per hour cap on attorney's fees, which may be increased only where a court finds that "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). McPhee's attorney seeks $185 per hour of attorney time for his work in this case. (Doc. 19, Ex. 1). The determination of whether an award above the statutory maximum is appropriate is left to the "sound discretion of the district court." *Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 199 (6th Cir. 1992). The burden of proving that the EAJA cap should be increased, however, lies with plaintiffs. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

As noted above, the EAJA makes specific reference to "increase[s] in the cost of living," and attorneys regularly cite to the Consumer Price Index ("CPI"), which tracks increases in consumer costs, to justify rates higher than that provided for in the EAJA. The Sixth Circuit explicitly addressed the interrelation of EAJA fees and the CPI in *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). The court there held that a district court did not err by declining to grant an increase in the EAJA hourly rate where the attorney seeking fees "submitted only the Department of Labor's CPI, arguing that the rate of inflation supported an increase in fees." *Id*. The court indicated this was "not enough" evidence. *Id*.; *cf. Ward v. Comm'r of Soc. Sec.*, 2008 WL 5099713 at *2 (S.D. Ohio Dec. 1, 2008) (relying

solely upon the CPI); *Fauss-Miller v. Comm'r of Soc. Sec.*, No. 06-12079, 2008 WL 2415432, at *3 (E.D. Mich. June 12, 2008) (same).

In 2016 the Sixth Circuit returned to the interrelation of the EAJA and CPI in three decisions. In *Sakhawati v. Lynch*, 839 F.3d 476 (6th Cir. 2016) the court cited *Bryant* to reaffirm the proposition that "the Department of Labor's Consumer Price Index alone, indicating the rate of inflation, is not enough" to carry the plaintiff's burden in establishing an increase in the hourly EAJA rate.

In *Clark v. Commissioner of Social Security*, the court addressed a case arising out of Kentucky, but where plaintiff's attorney resided in Syracuse, New York; the attorney provided only a "half-page calculation of her fees using the Midwest Urban CPI to reach an adjusted hourly rate of $176.13 per hour," and in the reply brief attached "a declaration concerning [the attorney's] experience and his non-contingent hourly rate in Syracuse, New York." 849 F.3d 647, 650 (6th Cir. 2016). Despite concluding that "the CPI provides a reasonably accurate measure of the need for inflation adjustment to the statutory cap in most cases," the court reaffirmed that this information alone cannot satisfy 28 U.S.C. § 2412(d)(2)(A) insofar as it requires that the rate "'shall be based upon prevailing market rates for the kind and quality of the services furnished'" within "a given community for attorneys of comparable skill, experience, and reputation." *Id.* at 650, 652 (quoting § 2412(d)(2)(A)).

In *Coursey v. Commissioner of Social Security*, the Sixth Circuit further clarified that "[t]his court requires a plaintiff seeking an attorney's fee of greater than $125 per hour to show by competent evidence both that the cost of living justifies a higher rate and, as the statute itself requires, that the fee is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" 843 F.3d

1095, 1098 (6th Cir. 2016) (quoting *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009)). CPI alone does not "show whether the prevailing rate in the relevant community is higher than $125 per hour," and is therefore insufficient, by itself, to justify a rate above $125 per hour. *Id.*

The Sixth Circuit has ostensibly reaffirmed that the burden of justifying an increased rate of payment rests upon the plaintiff. *See, e.g.*, *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016); *Bryant*, 578 F.3d at 450. Yet the EAJA itself does not require this practice, and instead provides only that $125 per hour is the cap "unless the court determines that an increase" is justified. 28 U.S.C. § 2412(d)(2)(A). Indeed, even recent Sixth Circuit opinions muddy these waters. In both *Coursey* and *Clark*, for instance, the district courts chose a rate of $140 per hour despite insufficient proffers of evidence from the plaintiffs. In *Coursey* the plaintiff did not supply any evidence of rates charged by practitioners of comparable skill in the district, whereas the Commissioner "cited recent rulings establishing that $140.00 per hour is a reasonable and customary rate for experienced social security practitioners in the Louisville metropolitan area which is in the Western District of Kentucky." *Coursey v. Colvin*, No. 1:15CV-00005-HBB, 2016 WL 1090622, at *3-4 (W.D. Ky. Mar. 18, 2016). Armed with the CPI rates provided by plaintiff and the information regarding practitioners in the jurisdiction provided by Commissioner, the district court concluded that "an award in excess of $125.00 per hour is appropriate due to an increase in the cost of living," and granted an award at a rate of $140 per hour. *Id.* The Sixth Circuit approved of that decision, finding that the district court did not commit an abuse of discretion "when it awarded an attorney's fee based on $140 per hour. The court, giving 'Coursey the benefit of the doubt,' properly relied on evidence—in the form of judicial findings in previous cases—that the prevailing market rate

for similar services within its venue was $140 per hour." *Coursey*, 843 F.3d 1095, 1099 (6th Cir. 2016) (quoting *Coursey*, No. 1:15CV-00005-HBB, 2016 WL 1090622, at *4)). The district court and circuit court in *Clark* followed a nearly identical path, granting $140 per hour on the basis of prior court decisions supplied by the Commissioner regarding the remuneration obtained by comparable practitioners in the jurisdiction, and relying on the plaintiff's evidence of an increased cost of living. *See Clark*, No. 1:15-CV-00015-HBB, 2016 WL 1045563, at *3 (W.D. Ky. Mar. 15, 2016), *aff'd sub nom. Clark v. Comm'r of Soc. Sec.*, 849 F.3d 647 (6th Cir. 2016).

McPhee's attorney supplies only an affidavit in favor of his argument that the EAJA rate should be increased. In it, he asserts that his hourly rate for non-contingent work is $185, and that he expects to recoup a figure greater than that amount to account for "the risk of non-recovery involved in taking a case on a contingent fee basis." (Doc. 19, Ex. 1 at ID 1154). He also submits that "[t]he increase in the cost of living for 2017 is 1.559"—citing the "CPI-All Items Index"—and as a result, the hourly rate for 2017 "is $194.87," which is "below the market rate for the same kind and quality of legal services as performed in this case." (*Id.*). However, he omits further argumentation in order "[t]o minimize attorney fees for the fee litigation," and invites any challenge the Commissioner might have to the fees. (*Id.*). The Commissioner's Response does not discuss the topic of McPhee's proposed rate. *See generally* (Doc. 23).

While *Blum*, 465 U.S. at 896 n.11 places the burden of justifying a fee above $125 per hour, the Sixth Circuit's conclusions in *Coursey* and *Clark* that district courts did not abuse their discretion by ordering higher fees despite the plaintiffs having shirked that burden demonstrates that the rule is prudential rather than jurisdictional. Yet unlike in *Coursey* and

*Clark*, the Commissioner in this case merely opposes payment of EAJA fees without addressing the appropriate rate of payment. There is therefore no evidence in the record whatsoever, aside from McPhee's counsel's affidavit, regarding the rates obtained by similarly experienced practitioners in this jurisdiction.

*Coursey* and *Clark* appear to imply that evidence regarding the rate of similarly experienced practitioners in this jurisdiction need not come from the plaintiff, and could instead be supplied by the Commissioner, or perhaps even the Court's own research, without abusing the Court's discretion. But where *no* party has entered such evidence into the record, the undersigned is unwilling to depart from less ambiguous Supreme Court and Sixth Circuit precedent requiring more proof than a reference to the CPI in demonstrating the appropriateness of a fee in excess of $125 hourly. *Accord, e.g.*, *Hammerbacher v. Comm'r of Soc. Sec.*, No. 13-CV-15170, 2016 WL 3344390, at *4 (E.D. Mich. Apr. 8, 2016), *report and recommendation adopted,* No. 13-CV-15170, 2016 WL 3197392 (E.D. Mich. June 9, 2016).

The Court is aware that $125 today is a substantially less valuable sum than it was in 1996, when the EAJA rate was last amended, and would prefer to grant payment of the EAJA fee at a rate which accounts for inflation. Precedent, however, fetters this Court's capacity to accommodate such preferences. Barring a reinterpretation of the EAJA by the Sixth Circuit, this Court must deny a request for attorney's fees at a rate above $125 per hour if it cites nothing more than the CPI. Accordingly, the Court finds that payment at the standard statutory rate of $125 per hour is appropriate.

McPhee's attorney alleges that he spent 18.75 hours of attorney time on this case; multiplying that figure by $125 produces $2343.75.

Finally, the Court must address McPhee's attached assignment of her EAJA fee, in which she "assign[s] any right or interest I may have in the award of an EAJA fee and understand[s] that the EAJA award shall be paid to [her] attorney," Joshua T. McFarland. (Doc. 19, Ex. 2 at ID 1158). Per Supreme Court precedent, EAJA fees are typically paid directly to plaintiffs. *See Astrue v. Ratliff*, 560 U.S. 586 (2010). Although this Court (on many occasions) used to enforce a client's assignment of such fees to her attorney, *e.g.*, *Payne v. Comm'r of Soc. Sec.*, No. 13-CV-13561, 2015 WL 5212048, at *3 (E.D. Mich. Aug. 31, 2015); *Prieur v. Comm'r of Soc. Sec.*, No. 13-CV-12409, 2015 WL 143922, at *3 (E.D. Mich. Jan. 12, 2015), the Sixth Circuit recently held that "unless the government waives application of the [Anti-Assignment Act] in EAJA cases, fee awards must be paid to the prevailing party, not to the party's lawyer." *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 937 (6th Cir. 2017). Consequently, I may not dictate whether the Commissioner must honor the assignment at issue, as that question is not before this Court. *Accord, e.g.*, *Jordan v. Comm'r of Soc. Sec.*, No. 1:17 CV 33, 2017 WL 6451887, at *3 (N.D. Ohio Dec. 18, 2017) ("[W]hile the Commissioner may decide to make the fee payable to Plaintiff's attorney if he owes no preexisting debt to the United States, the Court will not so order.").

## II. ORDER

For the reasons set forth above, **IT IS ORDERED** that McPhee's Motion for EAJA Fee, (Doc. 19), be **GRANTED IN PART AND DENIED IN PART**, such that McPhee's attorney be awarded $2343.75 in fees under the EAJA.

Date: January 19, 2018                    S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

# **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: January 19, 2018                      By s/Kristen Castaneda
                                                      Case Manager